UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHRYN MAY KNOX,

       Plaintiff,

v.                                                                              Case No. 06-10428
                                                                                Hon. Sean F. Cox

CITY OF ROYAL OAK; OFFICER
SCAFONE and OFFICER ISAACSON,

       Defendants.

_____

## OPINION AND ORDER

    This matter is before the Court on Defendants' Motion for partial summary judgment.

The parties have fully briefed the issues and a hearing was held April 12, 2007.  For the

following reasons, the Court **GRANTS** summary judgment on Plaintiff's municipal liability

claim against Defendant City of Royal Oak, and **DENIES** summary judgment on Plaintiff's

claims pursuant §1983 and for false arrest/false imprisonment against Defendants Scafone and

Isaacson.

## I.   BACKGROUND

    This action arises out of the arrest of Plaintiff, Kathryn Knox.

    On August 14, 2005, Lulu Hollow went to Plaintiff's house to check on her son, Richard

Hollow ("Hollow"), who was staying there with Plaintiff.  Lulu Hollow knocked on the door but

no one answered.  However, Plaintiff's dog was barking and both cars were there.  Lulu Hollow

1

called the police requesting a "welfare check" on her son.  The Royal Oak Police Department dispatched Defendant Officers Scafone, Isaacson, and Wolas to the home.

Officer Wolas was the first to arrive on the scene.  Lulu Hollow allegedly told Wolas that she did not approve of Hollow staying with Plaintiff, but did not indicate that Plaintiff was a threat to the safety of Hollow.  According to Plaintiff, Officers Wolas, Scafone and Isaacson went to the bathroom window of the house.  They planned to use a snare to secure the dog.  The Officers used the snare to move the shower curtain and discovered Hollow in the bathtub.  Lulu Hollow heard one of the officers say "Richard, Richard" and she ran toward the house.  Lulu Hollow allegedly tried to talk to Richard but was told by Isaacson to go to a neighbor's house.

Plaintiff alleges that Hollow confirmed his identity and told the officers he was alright. Officers asked Hollow to come outside.  After asking if the officers had a warrant, Hollow refused to come to the door.  Wolas pepper sprayed Hollow through the bathroom window. Hollow began shouting for Plaintiff.

Plaintiff claims she was in the sauna, and came out when she heard Hollow calling her name.  Hollow told Plaintiff there were officers pointing guns at him from the bathroom window. Plaintiff could not get out of the front door of her house to see what was going on, so she went out the back door.  Plaintiff claims that when she walked out of the back door, she was greeted by an officer pointing a gun at her.  She asked the officer, Isaacson, what was going on and he replied that they were there to do a welfare check.  Plaintiff purportedly told Isaacson she was fine and that she hadn't taken her medications lately.  When asked why she did not answer the door, she told Isaacson she was not obligated to answer the door.  According to Plaintiff, after a brief argument Scafone put his gun away and grabbed his pepper spray.  Realizing Scafone

2

planned to spray her, Plaintiff turned around to go back in the house.  Instead, Scafone used a
"straight arm bar takedown" and handcuffed Plaintiff.  After she was handcuffed, Plaintiff claims
she was pepper sprayed repeatedly by Scafone.  Isaacson sprayed Plaintiff's dog with pepper
spray.  This exchange was allegedly witnessed by a neighbor.  Eventually, Hollow came out of
the house and he was handcuffed and pepper sprayed.

Plaintiff was arrested and charged with interfering with a police officer and resisting
arrest.  As part of a plea agreement, the charge of resisting arrest was dismissed and the charge of
interfering with a police officer was amended to a civil infraction for violation of a zoning
ordinance by creating a nuisance by noise.

On January 31, 2006, Plaintiff filed a Complaint against the City of Royal Oak and
Officers Scafone and Isaacson alleging: (1) violation of 42 USC §1983 based on the Fourth
Amendment, against all Defendants; (2) gross negligence against Defendant Officers; (3) false
arrest and false imprisonment against Defendant Officers; (4) grossly negligent infliction of
emotional distress against Defendant Officers; and (5) assault and battery against Defendant
Officers.  Pursuant to a motion to dismiss, Plaintiff's claim incorrectly titled "negligent infliction
of emotional distress" was allowed as a claim for emotional distress.

On February 5, 2007, Defendants filed the instant Motion for partial summary judgment.
Defendants seek summary judgment on Plaintiff's claims of: (1) violation of her Fourth
Amendment rights for arrest without probable cause; (2) municipal liability against Royal Oak;
(3) false arrest/ false imprisonment under state law.  Defendants do not challenge Plaintiff's
claims based on the use of excessive force in this Motion.

## II.   STANDARD OF REVIEW

3

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## IV.    ANALYSIS

### A.    §1983 Claim Against Officers

Defendants assert they are entitled to summary judgment on Plaintiff's claim for violation of her Fourth Amendment rights based on qualified immunity

A plaintiff may bring a civil action for a deprivation of any federal constitutional or statutory right by state officials, pursuant to 42 USC §1983. However, defendants may raise the affirmative defense of qualified immunity. Qualified immunity is immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Police officers are afforded qualified immunity for their discretionary functions, provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998)(citation omitted).

4

Qualified immunity is designed to reduce the social costs of litigation by dismissing insubstantial lawsuits without trial. *Id.* (citation omitted). When the legal question of qualified immunity turns upon which view of the facts concerning the reasonableness of the use of force the jury believes, summary judgment is not appropriate. *Sova*, 142 F.3d at 903.

Before a court decides if a defendant is entitled to qualified immunity, the court must first determine whether any constitutional violation occurred. *St. John v. Hickey*, 411 F.3d 762, 768 (6th Cir. 2005). "If the court finds no violation, then the case must be dismissed at this threshold stage because §1983 is inapplicable on its face." *Id.* In this case there is no need to consider the second step, whether the right was clearly established. "It is clearly established that arrest without probable cause violates the Fourth Amendment." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2002)(citing *Donovan v. Thames*, 105 F.3d 291, 297-298 (6th Cir. 1997)). Defendants also concede that the second step is established. [Motion, p.8].

In order to determine if there was a constitutional violation of the Fourth Amendment, the Court must consider whether Plaintiff has alleged facts which, when viewed in the light most favorable to her, demonstrate she was arrested without probable cause. *Klein*, 275 F.3d at 550. "Probable cause to make an arrest exists if, at the moment of the arrest, the facts and circumstances within the officers knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Id.* (citation omitted). "Probable cause is assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and thus probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Id.* (citations omitted). "[I]n general, the

5

existence of probable cause in a §1983 action presents a jury question, unless there is only one reasonable determination possible." *Id*. (citing *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)).

The two offenses Plaintiff was arrested for are interfering with a police officer and resisting arrest. The relevant inquiry is whether there was probable cause to arrest Plaintiff for the interfering with a police officer offense because resisting arrest can only occur if Plaintiff was already being arrested.

Defendants claim a person commits the offense of interfering with a police officer if the person "fails to obey a lawful order of a police officer and thereby hinders the officer in the discharge of his or her duty." [Defendants' Motion, p.10 (citing City of Royal Oak, MI, Code §278-27)]. The lawful order that Plaintiff apparently disregarded was the order to remain in the backyard, and not to go in the house. Plaintiff claims that first, this was not a lawful order because the investigation ended when Defendants saw that both Hollow and Plaintiff were not in distress. Thus, Defendants had no authority to order Plaintiff to remain in the backyard. Second, the parties disagree whether Plaintiff was actually ordered not to go back in the house. [Response, Exhibit 1, p.131].

Neither party presents an official policy regarding the proper procedure for conducting a welfare check. Plaintiff submits the deposition testimony of Sergeant Thomas Goad of the Royal Oak Police Department. He testified that there is no formal written policy on how to conduct a welfare check. [Response, Exhibit 12, p.16]. However, Sgt. Goad does train officers on how to conduct welfare checks. *Id*. According to Sgt. Goad, some of the standard things officers do is "check around the perimeter of the house," "try to find if there was a large volume of mail sitting

6

in the house," and "see if any neighbors around there are familiar with that person." *Id*. at p.18.

He also testified that other various things will be done based on what information officers

received from the caller and at the scene. *Id*. Once the officer determines that "somebody is

okay" the call is cleared. *Id*. Sgt. Goad agreed that on a welfare check, if the individual is

identified, appears to be uninjured, and not the victim of a crime, he clears the call. *Id*. at 20.

Defendants testimony of what a welfare check requires was consistent with Sgt. Goad's.

Defendant Isaacson testified that a welfare check requires a check to see if the person is "okay,"

once the person is found to be "okay" that is the end of the welfare check. [Response, Exhibit 9,

pp.49-50]. Isaacson stated that on a welfare check, as soon as a person answered the door, he

would leave. *Id*. at 50. Scafone described a welfare check as "you're checking to see if a [sic]

individual or more than one person is medically, physically okay, anything that happened to

them." [Response, Exhibit 8, p10]. Scafone stated that if the person is "okay and there's no other

mitigating circumstances, your - your job has been completed." *Id*. at 11-12.

Whether a reasonable officer would have made the determination that Hollow and

Plaintiff were "okay" and called off the investigation prior to arresting Plaintiff is a disputed

issue of material fact. Plaintiff offers testimony that when Defendants encountered Hollow, he

told them he was Richard Hollow and that he was fine. [Response, Exhibit 6, p.29]. Plaintiff

testified she later went outside in the backyard and after being told the officers were there to

conduct a welfare check, told the officer she was "fine." [Response, Exhibit 1, p.124]. Scafone

testified that Hollow did not appear to be physically hurt or a victim of a crime when he

encountered him in the bathroom. [Response, Exhibit 8, p.53]. Officer Isaacson testified that he

did not know what Richard Hollow said to the other officers when they encountered him in the

7

bathroom. [Reply, Exhibit 2, p.79]. Further, Isaacson claims he was "peeking" in the bathroom

for portions of the incident; he did not see much of what went on. *Id*. at 78-84. Isaacson alleges

he was unsure if Richard Hollow needed medical help or was a victim of a crime. *Id*. at 85.

Isaacson then went to the back of the house where he found Plaintiff. He claims she told him

that she lived there and started screaming at him. *Id*. at 89-90. According to Isaacson, he told

Plaintiff he was there to conduct a welfare check on Hollow, but could not recall her response.

*Id*. at 92.

Whether from these circumstances a reasonable officer would have known that both

Hollow and Plaintiff "were okay" sufficient to end the welfare check depends on the resolution

of issues of material fact. Plaintiff offers testimony that she and Hollow told officers they were

fine, and Hollow identified himself. Further, Defendants did not indicate they had a suspicion

that Plaintiff or Hollow were physically injured or victims of a crime. Plaintiff presents

sufficient evidence, which if believed, could allow a jury to infer the welfare check should have

ended when Isaacson was told by Plaintiff that she was fine, and thus, there was no probable

cause to arrest her for interfering with an investigation when she went back in the house. In

addition, whether Plaintiff was even ordered to remain outside is a disputed issue of fact.

Plaintiff testified that she was never told not to go back in the house. [Response, Exhibit 1,

p.131].

Thus, the Court cannot determine whether Defendants had probable cause because of

disputed issues of fact. Consequently, the Court cannot determine if a constitutional violation

occurred and cannot grant Defendants qualified immunity. See *Griffith v. Coburn*, 473 F.3d 650,

657 (6th Cir. 2007)(citing *Sova v. City of Mt. Pleasant*, 142 F.3d 898 (6th Cir. 1998)("where the

8

legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability, and thus summary judgment should not be granted").

**B.      Municipal Liability**

Defendants argue that Plaintiff fails to establish a claim against Defendant City of Royal Oak.  Defendants contend that Plaintiff makes conclusory allegations and fails to identify any policy or practice of the City under which Defendants acted to cause Plaintiff's alleged injury. Defendants argue that a single incident cannot form the basis of municipal liability.

Plaintiff alleges that Sergeant Gordon Young responded to the scene but did not provide direction to the Officers and that the Royal Oak Police Department has never conducted an investigation of Plaintiff's allegations.  From this, Plaintiff concludes that the Royal Oak Police Department has "ratified the officers' misconduct and concurrent violation of plaintiff's constitutional rights, as having been within the custom, practice and policy of the City of Royal Oak's police department." [Response, p.15].  Plaintiff claims the Royal Oak Police Department ratified Defendants' conduct by charging Plaintiff with interfering with an investigation.

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The custom or policy must have been the moving force behind the constitutional violation.  *Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 442 (6th Cir. 2000).  "A municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas*, 398 F.3d at 429.  There are four methods of proving a municipal policy or custom, the plaintiff can look to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final

decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.  *Id*.

It is unclear exactly what Plaintiff contends is the custom or policy that was the moving force behind Plaintiff's alleged injury.  Plaintiff directs the Court to police practices expert D. P. Van Blaricom's opinion that "the Royal Oak Police Department officers were supervised with deliberate indifference to the outcome of their official interaction with plaintiff." [Response, p.15 (citing Exhibit 14, ¶7)].  Plaintiff surmises that "this evidence, and the fact that no policy changes were made following this incident, creates a question of fact regarding the City of Royal Oak's implicit policy regarding the appropriate use of force and the procedure for conducting a welfare check."  *Id*.

"To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."  *Pendergrass v. Cleveland Municipal School District*, 455 F.3d 690, 700 (6th Cir. 2006).  Similarly, to establish municipal liability based on inaction, the plaintiff must show: (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the moving force or direct causal link in the constitutional deprivation.  *Thomas*, 398 F.3d at 429.  Proving deliberate indifference requires a showing of a "history of widespread abuse that has been ignored" by the municipality.  *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir.

10

1994)(citing *Canton v. Harris*, 489 U.S. 378, 397 (1989)).

Plaintiff fails to demonstrate a "history of widespread abuse" or a "clear and persistent pattern of illegal activity." Instead, Plaintiff relies on this single incident and Defendants' failure to investigate to establish a policy or custom. Plaintiff relies on a Fifth Circuit case for the proposition that acceptance of "dangerous recklessness" by a policymaker is sufficient to prove a custom or policy. [Response, p.14 (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985)]. Plaintiff does not articulate what "dangerous recklessness" Defendants accepted. Aside from the fact that *Grandstaff* is not binding, as Defendants point out, the Fifth Circuit subsequently ruled that a single incident could not support a claim for municipal liability based on a failure to discipline an officer for an alleged constitutional violation. *Fraire v. Arlington*, 957 F.2d 1268, 1278-1279 (5th Cir. 1992). The court stated that "[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy...[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy." *Id*.

In the Sixth Circuit, "a single act may establish municipal liability only where the actor is a municipal policymaker." *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005)(citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). In *Thomas, supra*, the Sixth Circuit ruled that the single incident of a shooting, investigated and found justified by the police department, was insufficient to establish a custom or policy condoning the use of excessive force. *Thomas*, 398 F.3d 432-433. The court held that municipal liability cannot be established by "attempting to infer a municipal-wide policy based solely on one instance of potential misconduct." *Id*. The court went on to state that a plaintiff "bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference." *Id*. at 433.

11

Plaintiff also directs the Court to *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993) to support its argument that charging Plaintiff with a crime constituted a ratification of Defendants actions sufficient to constitute a custom or policy. The plaintiffs in *Feliciano* were a group of police officer cadets challenging the practice of surprise drug testing initiated by the police chief. The court began by making the determination of whether there was final authority to make the policy. The court stated that the municipality could only be liable if either, the chief of police had final authority under state law to make final policy regarding drug testing of police; or "a final policymaker for the City ratified [the chief's] actions." *Feliciano*, 988 F.2d at 655. After determining that the chief did not have final authority, the court turned to the question of ratification. The court began by noting "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final policy." *Id*. at 656 (citation omitted). The court went on to state that "mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification...[o]therwise, the City would be liable for all of the discretionary decisions of its employees, and this would be indistinguishable from *respondeat superior* liability." *Id*.

First, Plaintiff fails to identify specifically what decision was ratified when Plaintiff was charged. Presumably, Plaintiff is arguing that the City ratified a policy of improper performance of welfare checks. Plaintiff also fails to identify what final policymaker ratified the decision. Additionally, the court in *Feliciano* held that "even if it were shown that the municipality subsequently ratified the decision, the plaintiffs would then have to prove that the ratification was a 'moving force' in causing the constitutional violation." *Feliciano*, 988 F.2d at 656, n.6. Plaintiff fails to make this showing.

12

Accordingly, because Plaintiff fails to establish a custom or policy that was the moving force behind her alleged constitutional violations, Defendants are entitled to summary judgment on her claim for municipal liability pursuant to §1983.

### C.    False Arrest / False Imprisonment

Defendants only basis for seeking summary judgment of these state law claims is that Defendants had probable cause to arrest Plaintiff.  Additionally, Defendants argue governmental immunity applies pursuant to MCL 691.1407(2) because they had probable cause for the arrest and thus, could not have been grossly negligent.  As discussed above, whether Defendants had probable cause is a disputed issue of material fact.  Thus, Defendants are not entitled to summary judgment.

### D.    Van Blaricom's Report

Defendants argue that Van Blaricom's expert report presents nothing more than legal conclusions and should be precluded.  For clarification, the Court did not rely on Van Blaricom's report in the above analysis.

If Defendants seek to preclude use of Van Blaricom's expert report at trial, it is the proper subject of a motion in limine.  The Court will not rule on the issue now, as Defendants raised the issue for the first time in a reply brief, to which Plaintiff is not entitled to respond.

### V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment on Plaintiff's municipal liability claim against Defendant City of Royal Oak, and **DENIES** summary judgment on Plaintiff's claims pursuant §1983 and for false arrest/false imprisonment against Defendants Scafone and Isaacson.

**IT IS SO ORDERED.**

                                   **S/Sean F. Cox**
                                   **Sean F. Cox**
                                   **United States District Judge**

**Dated:  April 18, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on April 18, 2007, by electronic and/or ordinary mail.**

                                   **S/Jennifer Hernandez**
                                   **Case Manager**